UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEWERL D. SUMMERS,

                Plaintiff,              CIVIL ACTION NO. 05 CV 72992 DT

        v.                        DISTRICT JUDGE BERNARD A. FRIEDMAN

JO ANNE B. BARNHART,          MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment.  For the reasons stated herein, the court recommends that plaintiff's motion be granted and that the Commissioner's motion be denied and the matter be remanded to the Commissioner for further proceedings.

**II.  Background**

      On January 14, 2000, plaintiff filed an application for Supplemental Security Income (SSI), claiming that she was disabled due to a heart condition, high blood pressure, a bulging disc, and asthma, with an onset date of November 9, 1999.  (Tr. 47, 185)  Plaintiff was 51 years of age when she filed the application.  She has a high school education, with a work history including employment as an assistant at a nursing home and a security guard.  (Tr. 48, 68, 207)

-1-

The Social Security Administration (SSA) denied plaintiff's claim on May 8, 2000.  (Tr. 188-92)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 19, 199)  The hearing was held on January 23, 2001, before ALJ Henry Perez, Jr.  (Tr. 204-21)  Plaintiff, represented by counsel, appeared and testified at the hearing.  The ALJ also took testimony from a vocational expert (VE).

On March 29, 2001, the ALJ issued a decision denying plaintiff's claim.  (Tr. 20-29)  The ALJ determined that plaintiff had cardiac problems, asthma, hypertension, mild carpal tunnel syndrome, and a possible bulging disc, but that she did not have an impairment or combination of impairments that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations.  The ALJ further concluded that plaintiff could not perform her past relevant work as a nursing home attendant, which the ALJ characterized as medium to heavy exertion work, but that she retained the ability to perform a range of light work, such as machine tending, packaging, and visual inspection.[1]  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.

---

[1]"Light" work is defined in 20 C.F.R. § 416.967(b) as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Following the ALJ's denial of her claim, plaintiff filed a request for review of the decision with the SSA's Appeals Council.  (Tr. 16-17)  The Appeals Council denied the request on January 12, 2005.  (Tr. 10-12)  The ALJ's decision thus became the final decision of the Commissioner.

On August 2, 2005, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the parties have filed cross-motions for summary judgment.  Plaintiff first claims that her cardiac impairment meets the requirements of any one of the following sections of the Listings: § 4.02 (chronic heart failure while on a regimen of prescribed treatment), § 4.05 (recurrent arrhythmias), or § 4.08 (cardiomyopathies).  Plaintiff also contends that the ALJ erred in concluding that her testimony was not fully credible, that the ALJ's Residual Functional Capacity (RFC) assessment is not supported by substantial evidence, and that the ALJ erred in concluding that she is capable of performing a significant number of jobs in the national economy.  The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(C)(i).  The claimant bears of the burden of proving that she is disabled.

Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate SSI claims.  20 C.F.R. § 416.920.   As discussed in

Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment.  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.[2]

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

_____

[2]Foster involved a claim for DIB, not SSI.  However, the analysis is the same regardless of whether the claim in question is one for DIB or SSI.

-4-

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.  Analysis**

**A.  Listed Impairments**

At the third step of the sequential disability evaluation process, the ALJ must determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. If the ALJ determines that the claimant's impairment meets or equals a listed impairment, the claimant is deemed to be "under a disability" within the meaning of the Social Security Act. Foster, supra, 279 F.3d at 354. In the matter before the court, the ALJ made the following step-three determination:

> Claimant's condition does not meet or equal the severity of any
> impairment listed in Appendix 1 to Subpart P, of the Regulations
> No. 16.  Specifically, the reported clinical findings and laboratory
> test results do not show that her condition equals the severity of
> any impairment included in Appendix 1.  Therefore, disability
> cannot be established under 20 C.F.R. 416.920(d).

(Tr. 24)  Plaintiff contends that the ALJ's step-three determination is not supported by substantial

evidence.

In order to establish disability under the Listings, each requirement of the applicable

Listing must be met.  See 20 C.F.R. § 416.925(d)("We will not consider your impairment to be

one listed in appendix 1 solely because it has the diagnosis of a listed impairment.  It must also

have the findings shown in the Listing of that impairment"); see also Sullivan v. Zebley, 493

U.S. 521, 530, 110 S.Ct. 885 (1990)("For a claimant to show that his impairment matches a

listing, it must meet *all* of the specified medical criteria").  If any one requirement is not satisfied,

the ALJ must move beyond the Listings and determine whether the claimant can perform either

her past work or other work based upon the claimant's age, vocational profile, and residual

functional capacity (RFC).  See 20 C.F.R. § 416.920(a)(4)(iv), (v); see also Foster, supra, 279

F.3d at 354.

Plaintiff claims, as noted above, that her impairments meet the requirements of § 4.02A,

§ 4.05, and/or § 4.08 of the Listings.  However, plaintiff concedes in her brief that there is

insufficient evidence in the record to satisfy all of the requirements of § 4.05.  Further, plaintiff

points to no evidence in the record of "*[c]ardiomyopathies* documented by appropriate imaging

techniques or cardiac catheterization," a showing required under § 4.08 of the Listings.  Plaintiff

has thus failed to show that the ALJ erred in concluding that her heart impairment was not of

Listing-level severity under §§ 4.05 or 4.08 of the Listings.

Section 4.02A of the Listings provides the following:

> 4.02 *Chronic heart failure* while on a regimen of prescribed
> treatment (see 4.00A if there is no regimen of prescribed
> treatment).  With one of the following:
> A.  Documented cardiac enlargement by appropriate imaging
> techniques (e.g., a cardiothoracic ratio or greater than 0.50 on a PA
> chest x-ray with good inspiratory effort or left ventricular diastolic
> diameter of greater than 5.5 cm on two-dimensional
> echocardiography), resulting in inability to carry on any physical
> activity, and with symptoms of inadequate cardiac output,
> pulmonary congestion, systemic congestion, or anginal syndrome
> at rest (e.g., recurrent or persistent fatigue, dyspnea, orthopnea,
> anginal discomfort)[.]

There is evidence in the record of cardiac enlargement.  (Tr. 97, 104)  However, the evidence in

the record in insufficient to establish that the other criteria of the Listing have been met.  Plaintiff

points to no evidence in the record of pulmonary congestion, systemic congestion, or anginal

syndrome at rest.  Further, while there is evidence in the record, as discussed in greater detail

below, that plaintiff experiences  fatigue and shortness of breath and that her ability to engage in

physical activities is therefore limited, the evidence does not establish an "inability to carry on

any physical activity."  Plaintiff reported that she was capable of going grocery shopping,

dusting, cleaning, and doing other doing household chores, though she required occasional rest

breaks, that she could walk up to two blocks without rest, and that she engaged in simple

exercises, such as range of motion exercises for her arms and legs.  (Tr. 61-63)  These activities,

while certainly not extensive, reflect that plaintiff is capable of engaging in at least some physical

activity.  Based on the foregoing, the court finds no basis in the record to disturb the ALJ's

conclusion that plaintiff's heart impairment does not meet the requirements of § 4.02A of the

Listings.

### B.  Residual Functional Capacity

#### (i) Treating Physician Rule

After concluding that plaintiff's impairments did not meet or equal a listed impairment,

the ALJ moved to the next step of the disability determination process and assessed plaintiff's

Residual Functional Capacity (RFC):

> Claimant has the residual functional capacity to perform the
> physical exertion requirements of work except for lifting more than
> 10 pounds regularly and lifting more than 20 pounds occasionally.
> Claimant is moderately limited in the ability to push and pull with
> the upper extremities.  She should be able to sit or stand as
> necessary through the work day to relieve discomfort.  She should
> only occasionally climb ramps and stair[s]. stoop, crouch, balance,
> kneel, or crawl.  She should never climb, ropes, or scaffolds.  She
> is moderately limited in the ability to reach, handle, perform fine
> manipulation, and perform gross manipulation.  She should avoid
> even moderate exposure to respiratory irritants or temperature
> extremes.  There are no nonexertional limitations (20 C.F.R.
> 416.945).

(Tr. 27-28)

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial

evidence.  Her argument in this respect is two-fold.  Plaintiff first contends that the ALJ erred in

failing to accord controlling weight to the opinion of Dr. Barry Braver, one of plaintiff's treating

physicians, who indicated in a series of questionnaires that she was, in effect, totally disabled.

Plaintiff also claims that the ALJ erred in his assessment of her credibility.

Turning first to Dr. Braver's opinion, in the aforementioned questionnaires, dated

November 9, 2000, Dr. Braver indicated the following:

> (1) Plaintiff's ability to lift/carry was affected by her impairments.
> She could not lift any weight due to vertigo/chest pains.

> (2) Plaintiff's ability to stand/walk was affected by her impairment.
> She could not stand and/or walk for any amount of time in an 8-
> hour workday due to vertigo/chest pains.

> (3) Plaintiff could never climb, kneel, crouch, stoop, balance, or
> crawl die to vertigo/chest pains.

> (4) Plaintiff's ability to reach, handle, feel, push/pull, see, hear, and
> speak were affected by her arthritis and myalgia.

> (5) Plaintiff should avoid heights, noise, dust, fumes, vibration,
> moving machinery, temperature extremes, humidity, chemicals due
> to her chest pains and the presence of her pacemaker.

> (6) Plaintiff needed complete freedom to rest frequently without
> restriction, and it was necessary for her to lie down and/or rest for
> substantial periods of time during the day for relief of pain and/or
> fatigue.

> (7) Plaintiff experienced moderately severe pain that interfered
> with her ability to maintain attention and concentration to
> sufficiently complete tasks in a timely manner and would interfere
> with her ability to maintain reliable attendance in a work setting.

(Tr. 158-62)

The ALJ acknowledged the findings set forth in the questionnaires, but determined that

they were entitled to "no more than minimal weight" because "these limitations are not supported

by objective evidence emanating from the doctor's office or even the subjective assessments

made by Claimant outside of the disability process[.]"  (Tr. 25)  Plaintiff contends that Dr.

Braver's findings regarding the extent of her limitations are uncontradicted and thus entitled to

-9-

controlling deference under the "treating physician rule," and that the ALJ erred in failing to accord such weight to those findings.  For the reasons set forth below, the court disagrees.

As the Sixth Circuit stated in Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  Indeed, 20 C.F.R. § 416.927(d)(2) provides that a treating source's opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record.  See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

As noted by the ALJ, Dr. Braver did not cite any clinical tests or other objective medical evidence in rendering his findings as to plaintiff's limitations, and there do not appear to be any treatment notes in the record corroborative of his opinion.  In support thereof, Dr. Braver merely cited the fact that plaintiff suffered from vertigo, chest pains, arthritis, and myalgia. The mere existence of these conditions says nothing about whether the conditions are so severe as to be debilitating.  Thus, Dr. Braver's opinion regarding the extent of plaintiff's pain and limitations is

not "well-supported by medically acceptable clinical and laboratory diagnostic techniques[.]"  20
C.F.R. § 416.927(d)(2).

Dr. Braver's opinion is also beset with other infirmities that might reasonably cause an
ALJ to discredit it.  Dr. Braver indicated that plaintiff's impairments interfered with her ability to
see, hear, and speak.  There is nothing in the record indicating that plaintiff ever complained of
such deficiencies, and certainly nothing in the medical records showing that she has difficulty in
these areas.  Further, there appears to be a significant disconnect between the limitations cited by
Dr. Braver and the conditions that formed the basis of his conclusions.  Dr. Braver indicated in
one questionnaire that plaintiff's visual, auditory, and speech limitations resulted from arthritis
and myalgia.  Dr. Braver provided no explanation as to how these conditions could result in such
limitations, and it is difficult for the court to see any connection.  It is likewise difficult to see
how chest pains or the presence of a pacemaker would require plaintiff to avoid noise, dust,
fumes, chemicals, or any of the other environmental restrictions cited by Dr. Braver.  Certainly,
plaintiff's asthmatic condition might warrant avoidance of such irritants.  However, Dr. Braver
did not refer to that condition as a basis for the environmental restrictions.  These rather puzzling
findings suggest that Dr. Braver did not place a great deal of thought into filling out the
questionnaires and detract from the weight of his opinions.

In addition to the above, Dr. Braver's findings are contradicted by the findings of the
State of Michigan Disability Determination Services (DDS) consulting physician, as reflected in
a Physical Residual Functional Capacity Assessment form dated May 23, 2000.  The consultant
concluded that plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or

-11-

carry up to 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for about 6

hours in an 8-hour workday, and push and/or pull within the aforementioned weight limits.  (Tr.

75)  The consultant further concluded that plaintiff had no postural, manipulative,

communicative, or visual limitations, that she should avoid even moderate exposure to fumes,

odors, dusts, gases, and poor ventilation, and that she otherwise had no environmental

limitations.  (Tr. 76-78)  Though this consultant never examined plaintiff and did not have the

benefit of Dr. Braver's opinion, the ALJ was entitled to takes his findings into account in

forming the RFC determination in light of the infirmities in Dr. Braver's opinion.

 In sum, the court concludes that Dr. Braver's opinion is not well-supported and is in

conflict with other probative evidence in the record.  Accordingly, the ALJ was not required to

accord controlling weight to Dr. Braver's opinion under the "treating physician" rule.

### (ii)  Plaintiff's Credibility

 The ALJ noted in his opinion that plaintiff was "essentially alleging disability due to

pain."  (Tr. 26)  He found plaintiff's testimony regarding her pain to be only partially credible,

stating that "[c]laimant was accepted as credible to the extent that she cannot perform any more

than light exertional activites."  Plaintiff contends that the ALJ erred in reaching this conclusion.

 An ALJ's findings based on the credibility of the applicant "are to be accorded great

weight and deference."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.

1997).  However, credibility assessments are not insulated from judicial review.  Despite the

deference due, the reasons cited by the ALJ for discrediting a claimant's allegations must be

-12-

reasonable and the determination must be supported by substantial evidence.  <u>Jones v.</u>

<u>Commissioner of Social Sec.</u>, 336 F.3d 469, 476 (6th Cir. 2003).

The regulations provide that a claimant's statements regarding her "pain or other

symptoms will not alone establish that [she is] disabled[.]"  20 C.F.R. § 416.929(a); <u>see also</u>

<u>Walters</u>, <u>supra</u>, 127 F.3d at 531.  Rather, "there must be medical signs and laboratory findings

which show that you have a medical impairment(s) which could reasonably be expected to

produce the pain or other symptoms alleged and which, when considered with all of the other

evidence...would lead to a conclusion that you are disabled."  20 C.F.R. § 416.929(a).  Further,

the Sixth Circuit has developed a two-prong test for evaluating a claimant's assertions of

disabling pain:

> First, we examine whether there is objective medical evidence of
> an underlying medical condition.  If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the
> objectively established medical condition is of such a severity that
> it can reasonably be expected to produce the alleged disabling pain.

<u>Walters</u>, 127 F.3d at 531 (citations omitted).

The ALJ cited the following factors in support of his credibility determination: (1)

plaintiff showed no evidence of the alleged symptomology at the hearing; (2) plaintiff's earnings

records "did not indicate a record of regular employment, nor that she is highly motivated to

return to the work force," (3) there was no evidence in the record of "reliable indicators" of pain,

such as muscle spasm, muscle wasting, atrophy, muscle rigidity, neurological abnormalities, or

loss of the lordotic curve, (4) plaintiff was "in no program for pain," and (5) plaintiff was taking

"no significant analgesic."  (Tr. 23-26)

-13-

Recognizing that an ALJ's credibility determination is generally entitled to significant deference, the court nonetheless concludes, for the reasons set forth below, that the ALJ's credibility determination in this matter is not supported by substantial evidence.

The problem with the ALJ's credibility determination, as it stands, is not that he considered improper evidence or weighed the evidence in an improper manner. In the court's view, the ALJ relied upon proper factors, with one exception, and reasonably weighed those factors in assessing plaintiff's credibility.[3] Rather the flaw in the ALJ's credibility determination is that it was based upon an improper premise – that plaintiff was "essentially alleging disability due to pain." (Tr. 26) If that were the case, the court would be inclined to sustain the ALJ's credibility determination based upon the factors he cited and the record as a whole. However, in

_____

[3]The ALJ's consideration of plaintiff's lack of a consistent work history was improper. A claimant's work history is generally a fair subject of consideration in assessing credibility. See, e.g., Soverns v. Chater, 1996 WL 89368 at *4 (D.Kan. 1996)("The consistency of a claimant's work record is probative of credibility because it is a measure of the claimant's willingness and motivation to work"), see also 20 C.F.R. § 416.929(c)(3). Here, the record reflects that plaintiff, who was 51 years of age when she filed her SSI application, had held a job for only three to four years of her life up to that date. (Tr. 48) On its face, that might suggest that she lacked motivation to work in the past and that she lacks the motivation to return to work, as the ALJ surmised. However, other courts have found, and this court agrees, that it is improper to draw a negative inference from a claimant's spotty work history without some inquiry by the ALJ as to why the claimant did not maintain steady employment. See, e.g., Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998)("An ALJ should explore a claimant's poor work history to determine whether her absence from the workplace cannot be explained adequately (making appropriate a negative inference), or whether her absence is consistent with her claim of disability"); Johnson v. Barnhart, 2005 WL 3271953 at *10 (W.D.Wis.)("In other words, before drawing adverse inferences from a claimant's poor work history, an ALJ should give a plaintiff an opportunity to explain her earnings record). Here, the ALJ drew a negative inference from plaintiff's limited employment history without offering her an opportunity to provide an explanation for that history. Nonetheless, plaintiff's work history was but one factor in the ALJ's credibility assessment. This single error does not, by itself, warrant disturbing the ALJ's credibility determination.

-14-

assessing her credibility on the premise that she was alleging disability solely due to pain, the

ALJ overlooked, or perhaps ignored, a significant component of plaintiff's disability claim – that

she suffers from intractable fatigue, shortness of breath, and dizziness that render her incapable

of maintaining sustained employment.  Plaintiff testified at the hearing that she became tired

easily and that she experienced frequent shortness of breath as a result of her heart condition and

asthma.  (Tr. 209-10, 212, 214)  She also testified that she had dizzy spells once or twice per day.

(Tr. 211)

   In addition to plaintiff's hearing testimony, the record contains several references to

plaintiff's fatigue, shortness of breath, and dizziness.  In the activities questionnaire plaintiff

filled out in connection with her application, plaintiff indicated that she could walk no more than

one or two blocks and climb no more than two flights of stairs due to fatigue, that she had to rest

while shopping, and that she could do housework, but only at a very slow pace.  (59-60)  On June

11, 1999, plaintiff went to the emergency room at St. John Hospital, Detroit, Michigan,

complaining of difficulty breathing at work.  She was discharged in stable condition with a final

impression of acute exacerbation of asthma.  (Tr. 96)  On November 11, 1999, plaintiff was

admitted to St. John Hospital complaining of chest discomfort and breathing difficulties.

Examination and testing, including an ECG test, revealed that she had bradycardia and that she

had a third degree AV block, which necessitated the implantation of a permanent pacemaker.[4]

---

[4]Stedman's Medical Dictionary 230 (26th ed. 1995), defines bradycardia as "[s]lowness
of the heartbeat, usually defined (by convention) as a rate under 60 beats per minute."

-15-

(Tr. 100-09)  Further, on February 2, 2000, Dr. Leonidas Rojas, an internist, examined plaintiff at

the request of DDS.  He noted the following in his report:

> For more than a year she was feeling tired and somewhat short of
> breath, she has to do things very slowly because she was getting
> easily tired.  On November 11, 1999, she was hospitalized at St.
> John Hospital because of a very slow heart beat and she had a
> permanent pacemaker implant.  There is no history of syncope or
> actual cardiac arrest.  Since her pacemaker implantation she feels
> only somewhat better.  She is able to do her housework but still has
> to do it rather slowly because she never seems to have the energy
> or the will to do it.

(Tr. 154)

On March 3, 2000, Dr. Madjid Mesgarzadeh examined plaintiff, noting in his report that

"the patient has been getting more tired on going upstairs" and that she "has had increasing

shortness of breath and atypical chest pain[.]"  (Tr. 156)  Treatment notes dated July 10 and

September 11, 2000, indicate that plaintiff was complaining of dizziness.  (Tr. 175)  Further, on

February 4, 2003, plaintiff was again admitted to the emergency room at St. John complaining of

chest pain.  (Tr. 198-99)  The ER report indicates that the pain "does radiate to her left jaw and is

associated with shortness of breath."  Id.  The report further indicates that plaintiff was

experiencing shortness of breath on going up one flight of stairs, though the notation is

accompanied by the rather cryptic remark that her shortness of breath on going up stairs "has

been stable for the past two to three years."  Id.  It is also noted in the report that "[t]he patient

has a history of feeling more tired for the last couple of weeks."  Id.  Plaintiff again went to St.

John on January 29, 2004 complaining of chest pain.  (Tr. 201-02)  It was noted in the report that

plaintiff had shortness of breath with exertion and that she was experiencing some dizziness.  Id.

-16-

There is also some indication in the record that plaintiff experiences or has experienced paroxysmal nocturnal dyspnea.[5]  (Tr. 175)

        The ALJ addressed none of this evidence in assessing plaintiff's credibility or, for that matter, in assessing her RFC.  That is not to say that the record is so conclusive on the matter as to warrant a judicial finding that plaintiff's testimony regarding her fatigue, shortness of breath, and dizziness is fully credible and should have been accepted as such by the ALJ.  Rather, it is merely to say that there is sufficient evidence in the record regarding these matters that the ALJ should have considered them in addressing plaintiff's disability claim.  Plaintiff's heart condition, as evidenced by the implantation of a permanent pacemaker and diagnostic studies showing that she has cardiomegaly (an enlarged heart), coupled with her asthmatic condition, could reasonably give rise to disabling fatigue or shortness of breath, or such fatigue and shortness of breath as might substantially interfere with her ability to engage in sustained work activities.  See 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 4.00(E)(1)("Chronic heart failure may manifest itself by...[s]ymptoms of limited cardiac output, such as weakness, fatigue, or intolerance of physical activity").  Plaintiff's daily bouts of dizziness, to extent those allegations are credible, would further impact upon her ability to work.

---

        [5]Paroxysmal nocturnal dyspnea is defined in Stedman's Medical Dictionary 535 (26th ed. 1995) as "[s]hortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the heart or lungs...appearing suddenly at night, usually waking the patient after an hour or two sleep; caused by pulmonary congestion with or without edema that results from left-sided heart failure following immobilization of fluid from dependent areas after lying down."

In sum, with no apparent consideration, and certainly no discussion, of the evidence discussed forth above, the ALJ concluded that plaintiff had no nonexertional limitations and thus formed an RFC determination that included no such limitations.  The ALJ either ignored or overlooked evidence that plaintiff experiences recurrent fatigue, shortness of breath, and dizziness due to conditions that might reasonably give rise to such symptoms, and thus based his decision upon an incomplete review of the record.  In the absence of any consideration of that evidence and its effect upon plaintiff's ability to work, the court concludes that neither the ALJ's credibility determination nor his RFC determination can be sustained and, in turn, that the ALJ's ultimate determination that plaintiff is not disabled cannot be sustained.  However, the court further concludes that the evidence in the record does not conclusively show that plaintiff is entitled to a judicial award of disability benefits.  Rather, there remain questions regarding the credibility of plaintiff's assertions of disabling fatigue, shortness of breath, and dizziness and questions regarding the severity of the impairments that give rise to these symptoms that must be examined in the first instance by the ALJ.  See Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994)("If the court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits").  Accordingly, this matter must be remanded for further consideration of plaintiff's credibility, for further consideration of plaintiff's RFC, and for the taking of such additional evidence as the ALJ might deem necessary.  As to the latter, the

court notes that there is no indication in the record that plaintiff has ever taken an exercise test.

Regarding such tests, the Social Security regulations provide:

> It is well recognized by medical experts that exercise testing is the best tool currently available for estimating maximal aerobic capacity in individuals with cardiovascular impairments.  Purchase of an exercise test may be appropriate when there is a question whether an impairment meets or is equivalent in severity to one of the listings, or when there is insufficient evidence in the record to evaluate aerobic capacity, and the claim cannot otherwise be favorably decided.

20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 4.00(c)(2).  The record in this matter is not particularly revealing with respect to the severity of plaintiff's cardiac impairment.  It appears to the court that an exercise test would be appropriate to assist in determining how serious plaintiff's cardiac impairment is.  Though the court has, on the record before it, sustained the ALJ's conclusion that plaintiff does not have an impairment of Listing-level severity, such testing might result in a different conclusion.  In any event, the court leaves this, and any other such evidentiary decisions, to the ALJ.

**V.  Conclusion**

For the reasons stated above, the court finds that the Commissioner's disability determination is not supported by substantial evidence.  Accordingly, the court recommends that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
VIRGINIA M. MORGAN
Dated:   June 20, 2006              UNITED STATES MAGISTRATE JUDGE

-20-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEWERL D. SUMMERS,

           Plaintiff,             CIVIL ACTION NO. 05 CV 72992 DT

        v.                 DISTRICT JUDGE BERNARD A. FRIEDMAN

JO ANNE B. BARNHART,        MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of

record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on

June 20, 2006.

                    <u>s/Jennifer Hernandez</u>
                    Case Manager to
                    Magistrate Judge Virginia M. Morgan

-21-